Filed 2/16/24  P. v. Garcia CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. JOHNNY CARDENAS GARCIA III, Defendant and Appellant. | F084717 (Super. Ct. No. VCF198745A) **OPINION** |

-ooOoo-

**THE COURT**<sup>*</sup>

APPEAL from a judgment of the Superior Court of Tulare County.  Melinda Myrle Reed, Judge.

Matthew Aaron Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Erin Doering and Julie A. Hokans, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

<sup>*</sup>        Before Hill, P. J., Smith, J. and Meehan, J.

# INTRODUCTION

In 2008, appellant Johnny Cardenas Garcia III, Eduardo Madrigal, J.A., and J.O., were charged with first degree murder (Pen. Code,[1] § 187, subd. (a)). The information further alleged the following enhancements and special circumstances: with respect to Garcia and Madrigal, a gang-murder special circumstance (§ 190.2, subd. (a)(22)) and an arming enhancement for the personal use of a dangerous and deadly weapon, a knife (§ 12022, subd. (b)(1)). As to all defendants, the information alleged that the murder was committed for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)(C)).

In 2010, Garcia plead no contest to voluntary manslaughter and admitted the criminal street gang enhancement allegation. The trial court's indicated sentence would either be the middle term sentence of 16 years or the aggravated term of 21 years. The trial court ultimately sentenced Garcia to a term of 21 years in state prison.

In 2022, Garcia filed a petition for resentencing under former section 1170.95 (now section 1172.6). Following the appointment of counsel, but before the submission of briefing by the parties, the superior court denied Garcia's petition, finding that he had failed to make a prima facie case for resentencing relief.

Garcia contends that the trial court erred in denying his petition at the prima facie stage. Based upon the available record, we agree. We will therefore reverse the trial court's order and remand the matter back to the trial court with directions to issue an order to show cause and to conduct further proceedings consistent with section 1172.6, subdivision (c).

---

[1] All undefined statutory citations are to the Penal Code unless otherwise indicated.

## PROCEDURAL HISTORY

On August 26, 2008, the Tulare County District Attorney charged Garcia, Madrigal, J.A., and J.O. with first degree murder (§ 187, subd. (a)). The information further alleged the following: as to Garcia and Madrigal, a gang-murder special circumstance (§ 190.2, subd. (a)(22)) and an arming enhancement (§ 12022, subd. (b)(1)); and as to Garcia and all three of his codefendants, that the murder was committed for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)(C)).

On March 10, 2010, Garcia plead no contest to an amended charge of voluntary manslaughter (§ 192, subd. (a)) and admitted the gang enhancement allegation (§ 186.22, subd. (b)(1)(C)) for an indicated sentence of 16 to 21 years in state prison. The parties stipulated that the preliminary hearing transcript provided the factual basis for the plea. The remaining allegations, including the section 12022, subdivision (b)(1) arming enhancement, were dismissed by the prosecutor in view of the plea. Garcia was ultimately sentenced to the upper term of 21 years.

On March 23, 2022, Garcia filed a petition for resentencing under former section 1170.95. Garcia alleged that he could not be convicted of murder under the law as amended by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437). He specifically alleged that he was not the actual killer, and that he had entered a plea of no contest to voluntary manslaughter as an aider and abettor. Garcia further observed that he had not admitted the arming enhancement allegation.

On April 1, 2022, the superior court appointed counsel to represent Garcia.

On June 29, 2022, the superior court stated that its tentative decision was to find that Garcia's petition failed to state a prima facie case for relief. The court explained that it had "reviewed extensively the probation report and other documents in the file," and

asserted that "the file substantiates that [Garcia] was involved as the actual direct perpetrator [or] at least as a direct aider and abettor."

Trial counsel requested more time to prepare as her office had only learned of their appointment on Garcia's case the day before the hearing. The court agreed to continue the matter to the next day, but commented that it seemed futile to do so because "[t]he probation report identifies [Garcia] as the direct stabber in this case."

On June 30, 2022, the trial court denied Garcia's petition, finding that he failed to make a prima facie case for relief.

A timely notice of appeal followed.

## STATEMENT OF FACTS

*The Underlying Case*

The following statement of facts is derived from the reporter's transcript from Garcia's preliminary hearing, which is the factual basis for his plea:[2]

On February 8, 2008, Patrol Sergeant Orlando Ortiz with the City of Farmersville was dispatched to the area of Visalia Road and Filbert in Exeter. When Sergeant Ortiz arrived on the scene, he found the body of Brian Barajas in a carport down an alleyway.

During the course of the ensuing investigation, officers learned that Barajas was involved in a brawl that culminated in his murder. Although there were multiple

---

[2] The record supports the conclusion that the reporter's transcript from Garcia's preliminary hearing was not before the trial court when it found Garcia had failed to make a prima facie case for resentencing relief. We grant the Attorney General's request for judicial notice of this record. (See Evid. Code, §§ 452, subd. (d) [permitting judicial notice of court records]; 459 [we may take judicial notice of the records in our cases]; Penal Code, § 1172.6, subd. (d)(3) [authorizing the trial court to consider, at an evidentiary hearing, "evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed"].)

4.

witnesses to the incident, the following version of events represents non-hearsay evidence that was adduced at the preliminary hearing:

At approximately 3:20 p.m. on August 8, 2008, A.G. was looking out of the window of his residence when he saw Eduardo Madrigal, with whom A.G. was personally acquainted, stab Barajas with a brown knife. Madrigal was one of a group of three people who were "[s]tabbing," "punching," or "holding" Barajas's arms. Barajas fell to the ground after "they were done stabbing him." Eventually, Madrigal and the three other assailants fled.

On February 8, 2008, Garcia, Madrigal, and J.A. were all at the residence of H.R. H.R. claimed that all of them were affiliated with the Northern or Norteño criminal street gang. That afternoon, Garcia showed H.R. his new black switch-blade knife.

At approximately 3:20 p.m., H.R. was inside his house when he heard someone outside yell, "quit running, you fucking buster." H.R., a Norteño gang member, understood that the term "buster" was a term of disrespect that Sureños use towards Norteños.[3] When he looked outside, H.R. observed Barajas, a Sureño, yelling at and chasing J.O., a Norteño.

Garcia, Madrigal, and J.A. proceeded down a nearby alleyway, in the direction of the disturbance. When H.R. followed them, he observed Barajas yell, "buster," as Barajas swung a large board at J.O. in a nearby carport. J.O. punched Barajas in the face, causing Barajas to drop the board. Garcia, Madrigal, and J.A. began "jumping" Barajas, hitting and kicking him.

George Torres, a Sureño, came running down the alleyway carrying a baseball bat. H.R. ran towards Torres, scaring him away. When H.R. turned back around, Barajas was

---

[3] The parties and witnesses referred to "Sureños" and "Southerners" and "Norteños" and "Northerners" interchangeably. For ease of reference, we refer to the relevant criminal street gangs as either Sureños or Norteños.

"full of blood," and was not moving. H.R. claimed that he never saw anyone stab Barajas.

Following the attack, Garcia, Madrigal, J.A., and J.O. fled in different directions. Garcia ran into H.R.'s backyard. He told H.R. that he had hidden his knife in a sprinkler box in the apartment complex next door to H.R.'s home.

Detective Sergeant Mike Marquez with the Farmersville Police Department spoke with H.R. H.R. advised Sergeant Marquez that Garcia told him (H.R.) where the knife used in the attack on Barajas was hidden. Based upon this information, Sergeant Marquez searched for and then found the knife, which was black.

J.A. testified at Garcia's preliminary hearing pursuant to an agreement with the prosecutor. According to J.A., at about 3:20 p.m. on the day of the incident, he was in H.R.'s backyard when he saw Garcia, Madrigal, and J.O. fighting with Barajas in the alleyway carport. J.A. claimed that he did not see who had stabbed Barajas. But, after the attack, J.A. observed Garcia and Madrigal run into H.R.'s backyard. Garcia bent down and wiped blood off of a black knife, onto his pant leg.

Approximately one week after the incident, J.A. spoke to Garcia about the fight. According to J.A., Garcia told him that he had stabbed Barajas approximately three or four times.

Dr. Gary Walter, the pathologist who subsequently performed Barajas's autopsy, testified that Barajas had suffered eight sharp force trauma wounds to his body, most likely from a knife, and that he had superficial abrasions on his body. Dr. Walter could not determine whether the sharp force trauma wounds to Barajas's body had come from one knife or multiple knives. However, of the five deeply penetrating sharp force trauma wounds Barajas had suffered, the fatal injury was caused by a laceration to Barajas's heart.

6.

*The Preliminary Hearing*

At the conclusion of the hearing, the parties stipulated to the following allegations for purposes of the preliminary hearing: the gang allegations as to all defendants and the special circumstance allegations as to Garcia and Madrigal. Trial counsel for all four defendants declined to offer an affirmative defense or to call witnesses since "it [was] only the preliminary hearing." However, trial counsel for Garcia joined co-counsel's argument, claiming that Garcia was acting in defense of another during the commission of the attack.

The trial court raised the application of the natural and probable consequences doctrine with respect to J.O.'s liability for Barajas's murder. The prosecutor countered that the target offense was "murder, nothing else," but added that case authority supported the conclusion that J.O. could be liable for murder based upon the intended target offense of section 415, disturbing the peace. However, the prosecutor asserted that he was not limiting himself to the natural and probable consequences doctrine.

Relying upon *People v. Montes* (1999) 74 Cal.App.4th 1050, the trial court held that the evidence was sufficient to hold all of the defendants to answer as they had been charged in the complaint. (See *Id.* at p. 1055 [shooting of rival gang member during retreat after a fight was natural and probable consequence of gang fight instigated by gang challenge].)

*Garcia's Sentencing Hearing*

Pursuant to his plea agreement, Garcia would either be sentenced to the middle term of 16 years or the aggravated term of 21 years in state prison, the ultimate decision would be committed to the discretion of the trial court. Garcia waived his right to a hearing under "*Blakely* [*v. Washington* (2004) 542 U.S. 296]."

At the sentencing hearing, Garcia and his family submitted letters to the court which were not made part of the record. Garcia also addressed the court. Although he

apologized for his "participation in an event that resulted in [Barajas's] death," he never made a clear admission to having stabbed Barajas.

At the conclusion of the hearing, the trial court found the presence of several aggravating circumstances, including: the crime involved great violence (former Cal. Rules of Court, rule 4.421(a)(1)), that Garcia was armed with a weapon during the commission of the offense (*id*., rule 4.421(a)(2)), and that the victim was particularly vulnerable (*id*., rule 4.421(a)(3)). The court's findings were based upon the probation officer's report and the reporter's transcript from the preliminary hearing.

Addressing Garcia directly, the court concluded, "while the victim may have been involved in aggressive behavior beforehand, the circumstances as reflected in the preliminary hearing transcript [showed] that the victim, Mr. Barajas, had been incapacitated. He was on the ground. He was no longer a threat to you or to anyone around you. Yet, you proceeded to take a knife and inflict mortal wounds on Mr. Barajas."

The trial court further found that Garcia had engaged in violent conduct in the past, indicating that he represented a serious danger to society (former Cal. Rules of Court, rule 4.421(b)(1)), his prior convictions were increasingly more serious (*id*., rule 4.421(b)(2)), and that his prior performance while on probation had been unsatisfactory (*id*., rule 4.421(b)(4)).

Trial counsel asserted that there were mitigating circumstances present, but the court found counsel's assertions unpersuasive. The trial court denied counsel's claim that Barajas had provoked the altercation, that Garcia had been acting under duress, and that Garcia had made an early admission of responsibility. The prosecutor offered a joint resolution of Madrigal's and Garcia's cases. However, Madrigal was initially hesitant to accept a plea agreement. The trial court explained that the fact that Garcia was ready to enter a plea, despite his codefendant's hesitation, did not constitute an early admission of guilt.

*The Superior Court's Ruling on Garcia's Petition for Resentencing*

At the hearing on Garcia's petition for resentencing, the superior court explained that its tentative decision was to deny Garcia's petition, because he "ha[d] not satisfied the prima facia [*sic*] that he participated in this offense under the felony murder rule with a different target offense, or that he was an aider and abettor under the natural and probable consequences doctrine."

Trial counsel acknowledged that it appeared from the probation report's recitation of the facts of the offense that "perhaps [Garcia] was, in fact, in possession of a weapon and did the stabbing." But trial counsel argued that the essential facts of whether Garcia was in possession of a knife and personally stabbed the victim were not "actually adjudicated or found true."

The court responded, "I understand, but the [Penal] [C]ode requires [Garcia] to carry the burden showing the prima facie case. The Court is allowed to review documents in the file, and [Garcia] simply has not met his burden in that regard. [¶] … [¶] So the Court denies [Garcia]'s petition for resentencing based on failure to a … establish prima facia [*sic*] case for relief."

## ANALYSIS

## I. The Superior Court Erred in Denying Garcia's Petition at the Prima Facie Stage

Garcia contends that the superior court erred by denying his petition for resentencing at the prima facie stage.[4] According to Garcia, nothing in the record of

---

[4] The parties agree that the superior court erred by relying on the probation officer's report in determining that Garcia had failed to make a prima facie showing for section 1172.6 resentencing relief. As the Attorney General observes, "[a] probation report 'ordinarily is not part of the record of conviction.' " (*People v. Soto* (2018) 23 Cal.App.5th 813, 816, fn. 2, quoting *People v. Oehmigen* (2014) 232 Cal.App.4th 1, 5.).

9.

conviction conclusively demonstrates that he is ineligible for resentencing relief under section 1172.6. The People counter that Garcia is ineligible for relief as a matter of law because the preliminary hearing transcript establishes, without factfinding involving the weighing of evidence or the exercise of discretion, that he was the actual killer. We agree with Garcia.

### A.     Section 1172.6

"Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) amended the felony-murder rule by adding section 189, subdivision (e). [Citation.] It provides that a participant in the qualifying felony is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. [Citation.] The Legislature also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*People v. Harden* (2022) 81 Cal.App.5th 45, 50-51; *People v. Strong* (2022) 13 Cal.5th 698, 707-708.)

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," initially codified in former section 1170.95. (*People v. Strong, supra,* 13 Cal.5th at p. 708.) The initial version of former section 1170.95 permitted "a person with an existing conviction for felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to have the murder conviction vacated and to be resentenced

---

We agree as well. However, because we review the correctness of the trial court's ruling and not the reasons for its ruling (see *People v. Zapien* (1993) 4 Cal.4th 929, 976), we do not address the trial court's ruling further.

on any remaining counts if he or she could not have been convicted of murder as a result of the other legislative changes implemented by Senate Bill 1437." (*People v. Flores* (2020) 44 Cal.App.5th 985, 992.)

Effective January 1, 2022, Senate Bill No. 775 (2020-2021 Reg. Sess.) (Senate Bill 775) made substantive amendments to former section 1170.95 that were consistent with our Supreme Court's decision in *People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*), and also " '[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.' " (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.)

On June 30, 2022, the statute was renumbered as section 1172.6 without further substantive changes. (See *People v. Saibu* (2022) 81 Cal.App.5th 709, 715, fn. 3.) Section 1172.6, subdivision (a) provides the following:

> "(a) A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:
>
> > "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.
> >
> > "(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

The superior court shall appoint counsel if requested by petitioner. (§ 1172.6, subd. (b)(3).) After service of the petition, the prosecutor shall file and serve a response. The petitioner may file and serve a reply after the response is served. (*Id.* at subd. (c).) "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

The prima facie determination is a question of law, and the superior court may deny a petition if the petitioner is ineligible for resentencing as a matter of law. (*Lewis, supra*, 11 Cal.5th at p. 966.) At the prima facie stage, the court's inquiry " 'is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime).' " (*People v. Pacheco* (2022) 76 Cal.App.5th 118, 125, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 980.)

The court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis, supra*, 11 Cal.5th at p. 971.)

12.

If the petitioner makes the requisite prima facie showing he or she is entitled to relief under section 1172.6, the superior court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subd. (d)(1).)

We review de novo an order denying a petition under section 1172.6 without issuing an order to show cause. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251; *People v. Coley* (2022) 77 Cal.App.5th 539, 545; *People v. Harrison* (2021) 73 Cal.App.5th 429, 437.)

**B.    Analysis**

In his petition, Garcia alleged:  (1) that the prosecution filed an information allowing it to proceed under a theory of murder based on the natural and probable consequences doctrine, or another theory under which malice was imputed to him; (2) that he accepted a plea offer in lieu of a trial at which he could have been convicted of murder, and (3) that he could not presently be convicted of murder because of the changes to sections 188 and 189.  (See § 1172.6, subd. (a)(1)-(3).)  The trial court was required to accept these allegations as true unless, "the record of conviction conclusively demonstrate[d] [that Garcia] was not entitled to relief as a matter of law."  (*People v. Williams*, *supra*, 86 Cal.App.5th at p. 1251.)

The record here did not.  Garcia was charged for first degree murder with three other codefendants.  Because the crime of murder was charged generically, the information allowed the prosecution to proceed on a theory of murder under the natural and probable consequences doctrine.  (See § 1172.6, subd. (a)(1); *People v. Davenport* (2021) 71 Cal.App.5th 476, 484 [" 'The allegation that a murder was committed " 'willfully, unlawfully, and with malice aforethought' " is a well-recognized way of charging murder in [a] generic sense,' " which "does 'not limit the People to prosecuting [defendant] on any particular theories.' "]; see also *People v. Didyavong* (2023) 90

13.

Cal.App.5th 85, 96, fn. 4 ["A murder charged generically does not limit the prosecution to any particular theories of liability."].)

Moreover, evidence adduced at the preliminary hearing was inconclusive as to whether Barajas had been stabbed by one or more than one person, and while the evidence showed that Garcia may have been armed with a knife, the evidence also showed that he was not the only one. Indeed, an arming allegation was charged as to both him and Madrigal.

In pleading no contest to voluntary manslaughter, Garcia did not admit to a specific theory of guilt. (See § 1172.6, subd. (a)(2); *People v. Flores* (2022) 76 Cal.App.5th 974, 987 [petitioner was not ineligible for relief where, "[i]n entering his plea, petitioner did not admit to or stipulate to any particular theory of murder"]; *People v. Eynon* (2021) 68 Cal.App.5th 967, 977 [petitioner who pleaded to a charge that he " 'did willfully, unlawfully, and with deliberation, premeditation, and malice aforethought murder' " the victim was not ineligible for resentencing as a matter of law because the charge was a "generic murder charge [that] allowed the prosecution to proceed on any theory of liability, including natural and probable consequences"].)

In some cases, the record may reveal that a petitioner has admitted more than the elements of the offense charged. These additional admissions may preclude resentencing relief as a matter of law. (See *People v. Rivera* (2021) 62 Cal.App.5th 217, 234; see e.g., *People v. Verdugo* (2020) 44 Cal.App.5th 320, 330 ["a petitioner who admitted being the actual killer as part of a guilty plea" would be ineligible for relief as a matter of law] *abrogated on other grounds by Lewis, supra,* 11 Cal.5th 952.) But, absent such admissions, a defendant's plea to the crime of murder, as it was generally charged prior to the passing of Senate Bill 1437, did not inherently imply that he or she had admitted to acting with either express or implied malice. (*People v. Rivera*, at p. 235.)

Here, Garcia did not specifically admit to the truth of facts showing that he was the actual killer, or even that he had acted with malice during the commission of the

14.

assault on Barajas. Nor did Garcia admit to the arming enhancement allegation. At the sentencing hearing, trial counsel claimed that "[Garcia] wasn't necessarily the stabber in this case. It was actually Eduardo Madrigal." Trial counsel acknowledged that Garcia had participated "in the incident … that took place," but represented that the incident was not the result of a planned attack on Barajas. According to trial counsel, the stabbing of Barajas was an unintended consequence of a physical confrontation that had ensued when Garcia came to the aid of his friend, J.O., who was being attacked by Barajas. Because Garcia did not specifically admit to stabbing Barajas, possessing a deadly weapon during the commission of the attack, or having acted with express or implied malice, the record does not conclusively demonstrate that he is ineligible for section 1172.6 resentencing relief.

The Attorney General attempts to resist this conclusion, arguing that there is ample non-hearsay evidence in the record showing that Barajas was the actual killer, and that the prosecutor never wavered from his effort to prove this theory. Relying upon the preliminary hearing transcript, the Attorney General observes that J.A. testified that he observed Garcia wiping blood off of his knife just after the attack, before hiding it. The knife was recovered by law enforcement in the precise location where Garcia told H.R. he had hidden it. Further, J.A. testified that Garcia had admitted to stabbing Barajas four or five times. We find the Attorney General's reliance upon the preliminary hearing transcript problematic.

Preliminarily, we observe that the extent to which the superior court is authorized to rely upon the reporter's transcript from the preliminary hearing at the prima facie stage of section 1172.6 proceedings is unclear. The issue is currently pending review before our Supreme Court in *People v. Patton* (2023) 89 Cal.App.5th 649, review granted June 28, 2023, S279670.

Nonetheless, we disagree with the Attorney General's assertion that the preliminary hearing transcript demonstrates, without factfinding, that Garcia was the

15.

actual killer or a direct aider and abettor to an express or implied malice murder. (Cf. *People v. Patton, supra,* 89 Cal.App.5th at p. 658 [the uncontroverted testimony from the petitioner's preliminary hearing demonstrated, " '[without] factfinding, weighing of evidence, or credibility determinations,' " that he was the sole perpetrator of an attempted murder, and thus, was ineligible for section 1172.6 resentencing relief as a matter of law].)

Regardless of the prosecutor's theory as to Garcia's role in Barajas's murder and the strength of the evidence adduced at the preliminary hearing which supports that theory, Garcia never admitted to being the actual killer or having acted with malice. His plea to the generic crime of voluntary manslaughter was not an admission to the truth of these facts. As our colleagues explained in *People v. Rivera*: " 'The factual basis required by section 1192.5 does not require more than establishing a prima facie factual basis for the charges. [Citation.] It is not necessary for the trial court to interrogate the defendant about possible defenses to the charged crime [citation], nor does the trial court have to be convinced of [the] defendant's guilt.' [Citation.] In addition, '[a] defendant is not required to personally admit the truth of the factual basis of the plea, which may be established by defense counsel's stipulation to a particular document.' [Citation.] Thus, absent an indication that a defendant admitted the truth of particular facts, the stipulation to a factual basis for the plea does not 'constitute[ ] a binding admission for all purposes.' " (*People v. Rivera*, *supra*, 62 Cal.App.5th at p. 235.)

Even assuming the preliminary hearing transcript contains compelling and admissible evidence that points to Garcia's guilt as the actual killer or a direct aider and abettor, we do not review the record for substantial evidence at this stage of the section 1172.6 petition proceedings. Garcia's petition may be denied at the prima facie stage "[o]nly where the record of conviction contains facts conclusively refuting the allegations in the petition." (*People v. Flores, supra*, 76 Cal.App.5th at p. 991, italics omitted, citing *Lewis, supra*, 11 Cal.5th at pp. 962-963.)

16.

To that end, we conclude that an affirmative finding that Garcia acted with malice during the attack on Barajas or that he was the actual killer would require factfinding that is not permitted at the prima facie stage. (See *People v. Duchine* (2021) 60 Cal.App.5th 798, 815 [the time for weighing and balancing and making findings on the ultimate issues arises at the evidentiary hearing stage rather than the prima facie stage; the record should be consulted at the prima facie stage only to determine readily ascertainable facts]; see also, *People v. Drayton*, *supra*, 47 Cal.App.5th at pp. 981-983 [in making an assessment of the petitioner's prima facie showing, the trial court should not have evaluated and weighed the evidence based on testimony at the preliminary hearing but instead should have accepted petitioner's asserted facts as true, abrogated on other grounds in *Lewis, supra*, 11 Cal.5th at pp. 963-964]; and, *People v. Strong, supra,* 13 Cal.5th at p. 720 ["a court determination that substantial evidence supports a homicide conviction is not a basis for denying resentencing after an evidentiary hearing…. Nor, then, is it a basis for denying a petitioner the opportunity to have an evidentiary hearing in the first place" (fn. omitted].)

The Attorney General further directs this court to admissions made by trial counsel at Garcia's sentencing hearing that he contends, show Garcia admitted to being the actual killer. At sentencing, trial counsel asserted that " '[Garcia] certainly understands that as a result of his conduct, *despite what others did, he took a life*.' " But trial counsel's representation falls short of a clear admission by Garcia that Garcia was the actual killer, versus an accomplice to an assault that resulted in Barajas's death. Further, trial counsel also represented that "[Garcia] wasn't necessarily the stabber in this case. It was actually Eduardo Madrigal." Thus, contrary to the Attorney General's assertion, Garcia did not admit responsibility for being the actual killer.

We acknowledge that at Garcia's sentencing hearing, the trial court found that Garcia was armed during the commission of the attack, and that Garcia used a knife to

inflict mortal wounds upon Barajas.  However, the trial court's findings were based upon the probation officer's report and the preliminary hearing transcript.

The probation officer's report is not part of the record of conviction.  (*People v. Soto*, *supra*, 23 Cal.App.5th at p. 816, fn. 2 ["A probation report 'ordinarily is not part of the record of conviction.' "]; see also, *People v. Trujillo* (2006) 40 Cal.4th 165, 179.)  Moreover, the facts recited in the probation officer's report were derived from police reports, which are generally inadmissible under the Evidence Code as case-specific hearsay.  (See *People v. Sanchez* (2016) 63 Cal.4th 665, 674-675.)  This evidence would be inadmissible at a section 1172.6, subdivision (d)(3) evidentiary hearing.  (See § 1172.6, subd. (d)(3).)  And, "[i]f such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage." (*People v. Flores*, *supra*, 76 Cal.App.5th at p. 988, fn. omitted.)

Although the preliminary hearing transcript is part of the record of conviction (see *People v. Reed* (1996) 13 Cal.4th 217, 223), and it contains admissible evidence, the Attorney General does not explain why the trial court's findings should be given conclusive effect.  (See *People v. Bratton* (2023) 95 Cal.App.5th 1100, 1117, 1123 [discussing the application of claim preclusion, or collateral estoppel, to section 1172.6 proceedings at the prima facie stage where the petitioner had been convicted of murder, as the actual killer, following a jury trial].)

The version of section 1170, subdivision (a)(3) that was in effect at the time of Garcia's sentencing hearing in 2010 provided the following:  "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court.…  The court shall select the term which, in the court's discretion, best serves the interests of justice....  In determining the appropriate term, the court may consider the record in the case, the

18.

probation officer's report, other reports, including reports received pursuant to Section 1203.03, and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing." (Former § 1170, subd. (b).)

Also at this time, former California Rules of Court, rule 4.420(b) had been amended to eliminate the requirement that the sentencing factors be proven by a preponderance of the evidence. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 836, fn. 3; Stats. 2007, ch. 3, § 2.) Thus, the trial court's findings at Garcia's sentencing hearing were not necessarily based upon evidence that would have been admissible at a section 1172.6, subdivision (d)(3) evidentiary hearing, nor does the record show that these findings made to a beyond-a-reasonable-doubt degree of certainty required for a conviction.

Since the parties do not discuss the elements of claim preclusion and whether this doctrine should apply to estop Garcia from arguing he is entitled to section 1172.6 resentencing relief, we need not and do not address it. The issue is deemed forfeited.

Garcia did not admit to any of the aggravating circumstances found true by the trial court. (See e.g., *People v. French* (2008) 43 Cal.4th 36, 50 ["defendant's plea of no contest constituted an admission to the elements of the charged offenses only, and not to any additional aggravating circumstances].) We therefore decline to rely upon the trial court's findings about the circumstance of Garcia's crime as a basis to conclude that Garcia is ineligible for resentencing relief as a matter of law.

We conclude that the record of conviction does not, based upon readily ascertainable facts, demonstrate that Garcia is ineligible for resentencing relief under section 1172.6 as a matter of law. We will therefore remand this matter back to the lower court for further proceedings, including the issuance of an order to show cause and an evidentiary hearing. (See § 1172.6, subds. (c), (d)(1).)

## DISPOSITION

The trial court's order denying Garcia's petition for resentencing under former section 1170.95 is reversed and the matter is remanded back to the trial court. On remand, the trial court is directed to issue an order to show cause, and to hold an evidentiary hearing pursuant to section 1172.6, subdivision (d).